IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| **JEFFREY R. MABEE and JUDITH B. GRACE,** individuals, residents of Belfast, Waldo County, Maine, <br><br> **Plaintiffs,** <br><br> v. <br><br> **JANET ECKROTE and RICHARD ECKROTE,** individuals, residents of Lincoln Park, New Jersey, <br> **Defendants.** | **DOCKET NO. 1:19-** |

# COMPLAINT
# AND DEMAND FOR JURY TRIAL

The Plaintiffs, JEFFREY R. MABEE, and JUDITH B. GRACE ("Plaintiffs"), by and through their counsel, Dana F. Strout, P.A., and Kimberly J. Ervin Tucker, Esq., for their Complaint for slander of title against the Defendants, JANET and RICHARD ECKROTE ("Eckrotes", "Defendants" or "Eckrote Defendants"), state and allege as follows:

## PARTIES

1. Plaintiffs Jeffrey R. Mabee and Judith B. Grace are residents of and domiciled in the City of Belfast, Waldo County, Maine.

2. Janet Eckrote and Richard Eckrote are residents of and domiciled in Lincoln Park, New Jersey.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the Plaintiffs' claims pursuant to 28 U.S.C. §1332 because: (a) there is complete diversity of citizenship between Plaintiffs and Defendants; and (b) the amount in controversy exceeds $75,000.00.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because: (a) the Plaintiffs are residents of Maine; (b) the actions complained of herein occurred and are occurring in the State of Maine; and (c) involve both the Plaintiffs' and Defendants' properties that are located in Waldo County, Maine.

## FACTS COMMON TO ALL CLAIMS

5. Plaintiffs are natural persons and the owners of real property located in Belfast, Waldo County, Maine, known as "Little River Center", located at 290 Northport Avenue, Belfast, Maine, or Belfast Tax Map 29, Lot 38. Plaintiffs' property is more particularly described in a Warranty deed from Heather O. Smith to the Plaintiffs, as joint tenants, dated May 31, 1991, recorded in the Waldo County Registry of Deeds, at Book 1221, Page 347, as set forth in Exhibit A attached hereto and incorporated herein.

6. Plaintiffs' land includes the upland and structures on Belfast Tax Map 29, Lot 38, and the intertidal land on which Lots 38, 37, 36 and most of Lot 35 front. See, Sketch below:



7. Plaintiffs are husband and wife and have owned the subject property in fee simple as joint tenants since May 31, 1991.

8. Janet Eckrote and Richard Eckrote are natural persons, residents of Lincoln Park, New Jersey, and are the owners of a certain piece or parcel of land located at Belfast Tax Map Page 29, Lot 36, or 282 Northport Avenue, Belfast, Waldo County, Maine (WCRD Book 3967, Page 5; Exhibit C-4).

9. As will be described in this Complaint, the Eckrotes have slandered the Plaintiffs' title to their property by publishing false statements regarding the Defendants' alleged ownership of intertidal land actually owned in fee simple by the Plaintiffs

and by actively aiding and abetting Nordic Aquafarms, Inc., a Delaware-registered corporation ("NAF") in falsely alleging an ownership interest in the Plaintiffs' intertidal lands in order to seek and obtain leases and permits from various local, State and federal administrative agencies and boards.

10. Initially, a cloud was placed on Plaintiffs' title without specific notice to Plaintiffs, on October 15, 2012, when a deed from the Estate of Phyllis J. Poor to Janet and Richard Eckrote was drafted and recorded in the Waldo County Registry of Deeds (WCRD at Book 3697, Page 5; Exhibit C-4).  That Deed contained an erroneous legal description of the Eckrotes' waterside boundary which improperly attempted to extend the Eckrotes' property by altering the property description of the waterside boundary from "along high-water mark of Penobscot Bay" to "along said Bay."  This change in the description language erroneously suggests that the waterside boundary of the land being conveyed to the Eckrotes extends to the low water mark, rather than the property terminating at the high water mark.

11. Whether this erroneous description was intentionally inserted in the deed to create a color of title in the Eckrotes to land owned by the Plaintiffs in fee simple, or was inserted as the consequence of gross negligence by the individual drafting and recording this instrument, this instrument clouded the Plaintiffs' title (without providing them specific notice).

12. This erroneous description has been exploited by the Eckrotes and their agents to publish false statements regarding Plaintiffs' ownership of the intertidal land on

which the Eckrotes' lot fronts, aid and abet NAF in publishing false statements regarding Plaintiffs' ownership of the intertidal land on which the Eckrotes' lot fronts, and to slander Plaintiffs' title.

13. Contrary to the legal description appearing in this October 15, 2012 deed, the deed description in *all* deeds in the Eckrotes' chain of title, dating back to January 25, 1946, and in particular the deed to the Eckrotes' predecessor in interest, Phyllis R. Poor (Janet Eckrotes' mother) state that the Eckrotes' waterside boundary is "to an iron pin in the mouth of a brook; thence Easterly and Northeasterly **along high water of Penobscot Bay** for 410 feet more or less to a stake at the outlet of a gully".  (See, Exhibits C-1, C-2 and C-3).

14. The words "along high-water mark of Penobscot Bay" are words of exclusion that mean the waterside boundary terminates at the high water mark and does not include conveyance of any ownership in the intertidal property (i.e. the land between high and low water marks).

15. Under Maine case law, the phrase "along said Bay" is considered words of inclusion that suggest the intertidal land between high and low water marks (which is owned by the Plaintiffs) are conveyed to the Grantee (here, the Eckrotes).

16. Copies of the relevant deeds in the Eckrote chain of title are attached hereto as Exhibits C-1 through C-4 and are incorporated herein by this reference. Exhibits C-1, C-2 and C-3 (Exhibit C-4, the deed to the Eckrotes is referenced above) all state in relevant part as follows:

    a. The January 25, 1946 Warranty deed from Harriet L. Hartley-to-Fred R. Poor deed (WCRD Book 452, Page 205) states that the waterside boundary is "to an iron pin in the mouth of a brook; thence Easterly and Northeasterly *along high water of Penobscot Bay* for 410 feet more or less to a stake at the outlet of a gully" (i.e. words of exclusion under Maine case law that grant no ownership in the intertidal land to the Grantee and retain ownership in the severed intertidal land in the Grantor) (Exhibit C-1);

    b. The July 28, 1971 Warranty deed from Frederic R. Poor-to-William O. and Phyllis J. Poor (WCRD Book 691, Page 44) states that the waterside boundary is "*along high-water of Penobscot Bay*" (i.e. repeating the same words of exclusion and reiterating that the Grantees have no ownership in the intertidal land on which this lot fronts) (Exhibit C-2);

    c. The July 1, 1991 Quitclaim Deed from William O. Poor-to-Phyllis J. Poor (WCRD Book 1228, Page 346) states that the waterside boundary is "*along high-water of Penobscot Bay*" (i.e. repeating the same words of exclusion and reiterating that the Grantee has no ownership in the intertidal land on which this lot fronts) (Exhibit C-3).

17. By including words of exclusion in the January 25, 1946 deed to Fred R. Poor, Harriet L. Hartley – who continued to own the adjacent parcel to the South (currently designated as Belfast Tax Map 29, Lots 37 and 38) – retained ownership of the intertidal land in front of the land conveyed to Fred R. Poor, as well as the intertidal land of her own parcel.

18. Consistent with the legal description contained in these deeds, a survey commissioned *by the Eckrotes and for their benefit* with Good Deeds surveying company dated August 31, 2012, *was incorporated into the October 15, 2012* deed to them and allegedly provided the basis for the description in the Deed. The August 31, 2012 Good Deeds survey stated that the waterside boundary of the Eckrotes' lot is "along high water" – consistent with all prior deeds back to January 25, 1946. (Attached as Exhibit B and incorporated herein).

6

19. Pursuant to controlling Maine case law, a survey incorporated by reference in a deed supersedes contrary words in a deed description.

20. However, despite the unambiguous language in all prior deeds dating back to January 25, 1946 that the waterside boundary is "along high-water mark of Penobscot Bay" (Exhibits C-1 to C-3), and the plain and unambiguous statement on the August 31, 2012 survey that the waterside boundary is "along high water" (Exhibit B), the legal description to the October 15, 2012 deed erroneously states that the waterside boundary of this lot is "along said Bay" (Exhibit C-4).

21. The Estate of Phyllis J. Poor had no legal ability to confer title to intertidal land that Phyllis J. Poor did not own in life, as neither Ms. Poor nor her predecessors in interest dating back to the January 25, 1946, owned down to the low water mark as evidenced by the plain and unambiguous language in the relevant deeds.

22. Even though the erroneous legal description in the October 15,2012 deed is superseded by the survey description contained in the August 31, 2012 survey that was incorporated by reference into the deed, because the Eckrotes failed and subsequently have refused to record the August 31, 2012 Good Deeds survey in the Waldo County Registry of Deeds, the erroneous legal description in the October 15, 2012 deed has created a cloud on Plaintiffs' title that continues to this day.

23. The Eckrotes, the Eckrotes' surveyor, and their attorneys all knew or should have known, no later than August 31, 2012 that the Eckrotes' waterside boundary terminates at the high water mark of this lot and that neither the Eckrotes nor their

predecessors in interest back to January 25, 1946, have ever owned the intertidal land on which the Eckrotes' lot fronts.

24. As a result of this intentional concealment by the Eckrote Defendants of the unrecorded August 31, 2012 Good Deeds survey, Defendants intentionally aided NAF in making repeated false claims of title, right or interest in Plaintiffs' intertidal land at public hearings, the press and in multiple filings to local, State and federal permitting authorities in NAF's efforts to obtain permits related to the construction and operation of its commercial fish farm in Belfast, Maine.

25. Plaintiffs first learned of the error in the October 15, 2012 deed in April of 2019.

26. In an effort to protect their ownership of their intertidal property, Plaintiffs filed objections to NAF's claim of "sufficient" title, right or interest in all upland land required to obtain a submerged lands lease for its pipelines to be sited in Penobscot Bay from the Maine Bureau of Parks and Lands and to obtain other permits from local, State and federal permitting agencies and Boards.

27. Specifically, Plaintiffs advised these administrative agencies and boards, the Eckrote Defendants (through counsel of record), and NAF (through counsel of record), that the Plaintiffs – not the Eckrotes – are the fee simple owners of the intertidal land on which the Eckrotes' lot fronts, submitting voluminous evidence in support of Plaintiffs' ownership rights to all of the above.

28. Notwithstanding such notice, the Defendants have continued to assert, publish and advance a fallacious theory and claim of ownership to the Plaintiffs' intertidal

land and/or have supported NAF's efforts to make such slanderous claims to the Plaintiffs' intertidal land.

29. The August 31, 2012 survey was done by Good Deeds for the Eckrotes and at all relevant times since August 31, 2012 was in the Eckrotes' possession.

30. But for the Eckrote Defendants' concealment of the unrecorded August 31, 2012 survey, the Eckrotes and NAF, with the Eckrotes' assistance, would not have been able to falsely claim that they had title, right or interest in the Plaintiffs' intertidal land, based on the "color of title" in Plaintiffs' intertidal land created by the erroneous legal description in the October 15, 2012 deed.

31. The Eckrote Defendants have a significant pecuniary interest is both slandering the Plaintiffs' title and in aiding NAF in its own slander of the Plaintiffs' title, because, pursuant to the Easement Agreement that the Eckrotes signed with NAF on September 18, 2018, the Eckrotes will be paid a significant, but undisclosed sum for an easement across the Eckrotes' property by NAF if NAF obtains all of the permits and leases it seeks from various local, State and federal administrative agencies,. (See, Exhibit D attached hereto and incorporated herein).

32. The Eckrotes also have a contractual right in that Easement Agreement to obtain certain improvements by NAF to their property at 282 Northport Avenue, Belfast, Maine, of an unspecified value, if this Easement Agreement option is exercised by NAF, and to indemnification by NAF for their losses in third-party litigation, including attorneys' fees. (Exhibit D, Section 5(c)).

33. At the time that NAF and the Eckrote Defendants entered into the Easement Agreement on September 18, 2018, the Eckrote Defendants were in possession of two surveys that verified that the Eckrotes' waterside boundary was along the high water mark of their property and that the Eckrotes had no title, right or interest in the intertidal land on which their property fronts.

34. The second survey, dated April 2, 2018 by Good Deeds, put the Eckrote Defendants on notice no later than April 2, 2018, for the second time that they (the Eckrotes) had no legal authority to grant NAF an easement to place its three industrial pipelines in the intertidal land on which the Eckrotes' lot fronts. (See, Exhibit E attached hereto and incorporated herein).

35. Specifically, the April 2, 2018 Good Deeds survey specifically points out the inconsistency between the Eckrotes' deed and the prior deeds in uppercase type, in the center of the survey document near the waterside boundary of the Eckrotes' lot as follows:

> **SHADED AREA DEPICTS LANDS LOCATED BELOW THE HIGH TIDE LINE. THE DEED FROM THE ESTATE OF PHYLLIS J. POOR TO RICHARD AND JANET ECKROTE DATED OCTOBER 15, 2012 AND RECORDED IN BOOK 3697. PAGE 5 CONTAINS THE LANGUAGE. "...THENCE GENERALLY SOUTHWESTERLY ALONG SAID (PENOBSCOT) BAY A DISTANCE OF FOUR HUNDRED TWENTY-FIVE (425) FEET...."**
>
> **THE PREVIOUS DEED FROM WILLIAM O. AND PHYLLIS J. POOR TO PHYLLIS J. POOR DATED JULY 1, 1991, RECORDED IN BOOK 1228, PAGE 346 CONTAINS THE LANGUAGE, "....THENCE EASTERLY AND NORTHEASTERLY ALONG HIGH-WATER MARK OF PENOBSCOT BAY FOUR HUNDRED TEN (410) FEET...."**
>
> **I SUGGEST A LEGAL OPINION OF THE ABILITY OF THE ESTATE OF PHYLLIS J. POOR TO GRANT AN EASEMENT**

       **BELOW THE HIGH WATER MARK.**

(Exhibit E).

36. While the above referenced Easement Agreement between NAF and the Eckrotes by its terms does *not* grant NAF an easement below the high water mark of the Eckrote Defendants' lot, but terminates according to its own language at the high water mark (See, Exhibit A diagram of the boundaries of the easement area attached to Exhibit D), the Eckrotes have now joined NAF and taken the position that the Easement Agreement and their false claim of ownership to the intertidal land does in fact give them (the Eckrotes) the right to grant NAF access over the Plaintiffs' intertidal land.

37. The Eckrotes, the Eckrotes' surveyor, the Eckrotes' attorney(s), NAF, and NAF's agents (including their surveyors, title searchers and counsel) all knew or should have known, no later than April 2, 2018, that the Plaintiffs were the fee simple owners of the intertidal land on which the Eckrotes' lot fronts. However, despite such knowledge, the Eckrotes have continued to publish false statements slandering the Plaintiffs' title for their own pecuniary benefit.

38. On September 9, 2019, the Eckrotes stated publicly in the Waldo County Superior Court, in *Mabee, et al. v. Nordic Aquafarms, Inc. and Janet and Richard Eckrote*, et al. Case No. RE-2019-18 (Belfast Litigation) that they indeed claim to own the intertidal land based upon their previously recorded erroneous deed and the prior recorded deeds. This September 9, 2019 publication and filing by the Eckrotes constitutes a direct slander by the Eckrotes of Plaintiffs' title.

39. The Eckrotes slanderous claim of ownership to the intertidal land fronting their lot is demonstrably false, as all recorded deeds in the Eckrotes' chain of title back to 1946, including the October 15, 2012 deed as clarified by the August 31, 2012 Good Deeds survey, state that the Eckrotes own only to the high-water mark of their lot fronting on the Plaintiffs' intertidal land. (Exhibits C-1 through C-4).

40. At the time that the Eckrote Defendants published their false claim on September 9, 2019 that the intertidal land on which their lot fronts was never severed from the upland lot, the Eckrote Defendants and their agents knew based on the information previously provided to them by Good Deeds surveyors and the Plaintiffs' counsel, including the publicly recorded deeds in the Eckrotes' chain of title (Exhibits C-1 to C-3) that their claim was demonstrably false.

41. Having previously received information from both Good Deeds and the Plaintiffs that their claim of title to the intertidal land of the Plaintiffs' was false, the above publication on September 9, 2019 was made intentionally and maliciously, with a willful, wanton and reckless disregard for the truth, and with the knowledge, consent and/or acquiescence of the Eckrote Defendants.

42. The recording of the deed in October of 2012 without recording the clarifying and superseding survey incorporated by reference in that deed, along with the statement by the Eckrotes' counsel in formal pleadings filed in the Belfast Litigation, constitute one or more additional publications by the Eckrotes of a wrongful and slanderous claim to the Plaintiffs' intertidal property.

43. Despite requests to reform their deed to correct the erroneous legal description, renounce any claim to the Plaintiffs' intertidal land, and record the August 31, 2012 Good Deeds survey in the Waldo County Registry of Deeds, the Eckrotes have refused to take any actions to cure their slandering of Plaintiffs' title.

44. As a direct and proximate result of the Defendants' conduct, the Plaintiffs have incurred general and special damages in that the Plaintiffs' property, valued by NAF and the Eckrotes at $700,000.00 (not including the value of the intertidal land) is now unsellable. In addition, it has been necessary for the Plaintiffs to incur the expense of litigation, including engaging legal counsel, to try and clear title to their property from the Eckrotes' false and slanderous claims for themselves and NAF. Such damages are set forth in the First Claim for Relief.

## FIRST CLAIM FOR RELIEF

45. The Plaintiffs incorporate Paragraphs 1 – 44 into this claim for relief as though more fully set forth herein.

46. The Defendants Eckrote have slandered the Plaintiffs' title to their property by:

    (1) Publishing false statements as set forth above contained in the 2012 Deed, their recent court pleadings of September 9, 2019 along with the Defendants aiding and abetting NAF's slander to the Plaintiffs' title as alleged previously in this Complaint, all of which are incorporated herein by this reference;

    (2) These above statements by the Defendants that they own the Plaintiffs' intertidal land were and are false;

(3) The false statements were made with malice, fraud and/or made with a willful, wanton and reckless disregard of their falsity as the Defendants and their counsel had been put on detailed notice, *by surveyors retained by the Eckrotes in 2012 and NAF in 2018,* as well as the deeds referenced herein as Exhibits C-1 to C-3 of the Plaintiffs' ownership, as well as the defects in the Eckrotes' claim of ownership of the intertidal land on which the Eckrotes' lot fronts; and

(4) These statements have caused Plaintiffs to incur substantial special damages in the form of litigation costs relating to defending and enforcing their property rights in local, State and federal permit proceedings, and filing a Declaratory Judgment action to quiet title in Maine State court (including court costs, attorneys' fees, expert witness fees' and discovery and copying costs), as well as loss of value and marketability of the Plaintiffs' real property valued at a minimum of $700,000 up to $1.2 million.

55. Such false statements were published by Defendants, Defendants' agents (including counsel), with malice and with a reckless disregard of the falsity of those statements and the adverse impact of those statements on the value and marketability of Plaintiffs' real property.

57. Plaintiffs have retained attorneys with respect to the above proceedings and seek their legal fees and expenses incurred in those matters, all of which were incurred in attempting to protect the Plaintiffs' ownership of their land.   Plaintiffs seek

their court costs and litigation expenses, including expert witness fees and attorneys' fees incurred in those matters in this case as additional special damages relating to the slander of their title.

58. The actions of the Defendants were intentional and carried out with malice, fraud and/or a wilfull, wanton and reckless disregard of their truth or falsity, thereby entitling the Plaintiffs to special and exemplary damages.

WHEREFORE, the Plaintiffs pray that this Court grant judgment in their favor and against the Defendants, and each of them, jointly and severally, for all general, special and exemplary damages that the Plaintiffs have suffered, together with their attorneys' fees, expert witness fees, court costs, all general and special damages, interest according to law and for such other and further relief as the Court deems just and proper.

**PLAINTIFFS REQUEST THAT
ALL CLAIMS HEREIN BE TRIED BY A JURY OF SIX (6).**

Dated this 19th day of September 2019.

Respectfully submitted,

*/s/ Dana F. Strout*

_____
Dana F. Strout, Esq.#8239
Dana F. Strout, P.A.
270 West Street, Ste. B
Rockport, ME. 04856
207-236-0200

And

*/s/ Kimberly J. Ervin Tucker*

_____
Kimberly J. Ervin Tucker, #6969
48 Harbour Pointe Drive
Lincolnville, Maine 04849

P: 202-841-5439
k.ervintucker@gmail.com
Attorney for Plaintiffs