# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| **JEFFREY R. MABEE, et al.** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19-cv-00432-JDL |
| | ) | |
| **JANET ECKROTE, et al.** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' SPECIAL MOTIONS TO DISMISS

Jeffrey Mabee and Judith Grace, a married couple (collectively, the "Mabees"), bring this slander of title action against their neighbors, Janet and Richard Eckrote, asserting that the Eckrotes are claiming ownership of certain intertidal land on Penobscot Bay that belongs to the Mabees. The Eckrotes have filed Special Motions to Dismiss (ECF Nos. 8, 12) under Maine's anti-SLAPP statute, 14 M.R.S.A. § 556, which permits the dismissal of claims that are based on a defendant's exercise of its right of petition under the United States and Maine Constitutions. For the reasons explained below, I deny the Eckrotes' Special Motions to Dismiss.

### I. BACKGROUND

The First Amended Complaint alleges the following facts. The Eckrotes and the Mabees own parcels of land along the Penobscot Bay in Belfast which are separated by one parcel of land, as indicated in the following depiction.



The Amended Complaint alleges that the Mabees hold title to the strip of intertidal land bordering their own parcel, the Eckrotes' parcel, and the parcel in between.

The Eckrotes entered into an Easement Purchase and Sale agreement as the Seller, with Nordic Aquafarms, Inc. as the Buyer, dated August 6, 2018. The agreement concerned the sale of "a perpetual, subsurface easement . . . under a portion of the [Eckrotes'] Premises for the purpose of constructing, maintaining, owning and operating water pipes and related equipment." The agreement was made subject to Nordic Aquafarms securing certain necessary leases and permits. According to an affidavit submitted by the Eckrotes' attorney, Nordic Aquafarms seeks to build the pipeline as part of a proposed $500 million land-based salmon aquaculture facility.

Nordic Aquafarms subsequently applied to the Maine Bureau of Parks and Lands for a submerged lands lease that would allow it to build and place a pipeline on the Eckrotes' property, including the Eckrotes' intertidal land. The Bureau requested clarification from Nordic Aquafarms as to the Eckrotes' right, title, and

interest to the relevant lands. In response to this request, a representative of Nordic Aquafarms prepared a letter dated March 3, 2019, addressed to the Eckrotes which clarified that the easement contemplated by the purchase and sale agreement will allow Nordic Aquafarms to build its pipeline "anywhere in the wet sand ('intertidal zone') . . . adjacent to or within [the Eckrotes'] upland property." ECF No. 11-9 at 5. The letter further states that the easement area delineated in the purchase and sale agreement "includes the entirety of [the Eckrotes'] rights in the intertidal zone." *Id.* The Eckrotes signed a copy of the letter, signifying their agreement to its contents, and Nordic Aquafarms submitted the letter to the Bureau. The Bureau considered the March 3rd letter as part of its review of Nordic Aquafarms' application and granted Nordic Aquafarms a submerged lands lease covering the intertidal zone.

Previously, the Mabees filed an action against the Eckrotes in Waldo County Superior Court to quiet title to the land at issue, asserting that the affected area of the intertidal zone belongs to them and not the Eckrotes. They separately commenced this action in September 2019 asserting that the Eckrotes' endorsement of Nordic Aquafarms' March 3rd letter constitutes a slander of the title to their property.[1] In October, the Eckrotes filed their first special motion to dismiss this slander of title litigation. After the Mabees amended their complaint, the Eckrotes

---

[1] The Amended Complaint also asserts that the recording of a property description in an October 2012 deed forms the grounds for the Mabees' slander of title claim. The Mabees have since explicitly disavowed this theory, and I therefore treat it as abandoned. *See Nieves-Vega v. Ortiz-Quiñones*, 443 F.3d 134, 138 n.2 (1st Cir. 2006).

3

filed a second special motion to dismiss in November.[2] A hearing on the second special motion to dismiss was held before me on January 2, 2020.

## II. LEGAL STANDARD

A Strategic Lawsuit Against Public Participation ("SLAPP") refers to "litigation instituted not to redress legitimate wrongs, but instead to 'dissuade or punish' [a] defendant's First Amendment exercise of rights through the delay, distraction, and financial burden of defending the suit." *Gaudette v. Davis*, 160 A.3d 1190, 1194 (Me. 2017) (quoting *Morse Bros., Inc. v. Webster*, 772 A.2d 842, 846 (Me. 2001)). To protect those rights, Maine's anti-SLAPP statute, 14 M.R.S.A. § 556, authorizes the dismissal of SLAPP lawsuits early in the litigation through a special motion to dismiss. *Id.* The statute encourages that a court presented with such a motion should advance it on the court's docket and give it priority over other cases when the "interests of justice so require." 14 M.R.S.A. § 556 (West 2020).

A special motion to dismiss carries shifting burdens. *Davis*, 160 A.3d at 1196. At step one, the moving party (here, the Eckrotes) has the burden to establish that the claims brought against it are based on the moving party's exercise of its right of petition. *Id.* at 1198 (citing *Morse*, 772 A.3d at 849). Maine's anti-SLAPP statute defines "a party's exercise of its right of petition" in broad terms as:

> any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to

---

[2] The Eckrotes expressly incorporated the arguments from their first special motion into their second. I therefore deny the first special motion to dismiss (ECF No. 8) as moot. *See MMG Ins. Co. v. Podiatry Ins. Co. of Am.*, 263 F. Supp. 3d 327, 331 (D. Me. 2017).

4

> encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

14 M.R.S.A. § 556. Whether a lawsuit is based on such petitioning activity is "purely a question of law for the court's decision." *Davis*, 160 A.3d at 1198. If the moving party does not meet its burden at step one, the anti-SLAPP statute does not apply and the special motion to dismiss must be denied. *Id.*

If the moving party meets its burden, the analysis proceeds to step two, and the burden shifts to the nonmoving party to put forth prima facie evidence that the petitioning activity at issue (1) was "devoid of any reasonable factual support or any arguable basis in law" and (2) "caused actual injury" to the nonmoving party. *Id.* (quoting *Nader v. Me. Democratic Party*, 41 A.3d 551, 557 (Me. 2012)). If the nonmoving party fails to meet its burden, "either by the absence of the minimum amount of evidence on either element or based on some other legal insufficiency," the special motion to dismiss must be granted in part or in full without further procedure. *Id.*

If the nonmoving party meets its burden at step two as to any or all of the moving party's petitioning activities, the analysis proceeds to step three, and the nonmoving party must prove, by a preponderance of the evidence, the same elements "for which he successfully made out his prima facie case—that the [moving party's] petitioning activity was devoid of factual support or an arguable legal basis and that the petitioning activity caused the [nonmoving party] actual injury." *Id.* at 1198–99.

## III. ANALYSIS

Because the Eckrotes are the moving party, they have the burden at step one to demonstrate that the claim against them is based on the exercise of their right of petition. *Gaudette v. Davis*, 160 A.3d 1190, 1198 (Me. 2017) ("First, as always, the defendant must file a special motion to dismiss and establish, based on the pleadings and affidavits, that the claims against [him] are based on [his] exercise of the right to petition pursuant to the federal or state constitutions." (internal quotation marks and citation omitted)). Although the Maine Law Court has not had much occasion to opine on Maine's anti-SLAPP statute, the Law Court has observed that Maine's and Massachusetts' anti-SLAPP statutes are "substantively identical," and that the Massachusetts Supreme Judicial Court's interpretation of the Massachusetts anti–SLAPP statute "provides useful guidance for interpreting Maine's statute." *Gaudette v. Mainely Media, LLC*, 160 A.3d 539, 543 & n.2 (Me. 2017). In Massachusetts, the step one burden itself entails at least two components: "First, the special movant must establish that its complained of conduct is petitioning activity," and "[s]econd, the special movant must establish that the activity is its own petitioning activity." *Blanchard v. Steward Carney Hosp., Inc.*, 75 N.E. 3d 21, 33–34 n.19 (Mass. 2017) (collecting cases). I separately analyze these two components of step one.

### A. Petitioning Activity

The first component of step one involves determining whether the complained of conduct was "petitioning activity" that falls within the ambit of the anti-SLAPP statute. Here, the Mabees' slander of title claim against the Eckrotes is based on language contained in Nordic Aquafarms' March 3rd letter which the Eckrotes

endorsed. The letter purportedly clarified that the easement area in the Eckrotes' original purchase and sale agreement with Nordic Aquafarms included the intertidal zone.[3] Neither the letter, nor the purchase and sale agreement it concerns, were addressed to the Bureau of Parks and Lands. Nor, for that matter, were they directed at the public or any other governmental agency. The letter instead concerned the private agreement between Nordic Aquafarms and the Eckrotes.

Agreements between private parties concerning private land transactions are not the sort of conduct the anti-SLAPP statute was aimed at protecting because they in no sense relate to the right to petition. *See, e.g.*, *Hamilton v. Woodsum*, Cum-18-519, 2020 WL 284101, at *3 (Me. Jan. 21, 2020). Rather, "[t]he typical mischief that the anti-SLAPP legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects." *Davis*, 160 A.3d at 1196 n.5 (quoting *Morse Bros., Inc. v. Webster*, 772 A.2d 842, 846 (Me. 2001)). Thus, the Eckrotes were engaged in private activity, not "petitioning activity," when they endorsed the March 3rd letter clarifying the terms of their private agreement with Nordic Aquafarms.

Nevertheless, the Eckrotes, relying on *Klein v. Demers-Klein*, No. CUMSC-CV-18-0377, 2019 Me. Super. LEXIS 66 (Me. Super. Ct. April 17, 2019), argue that the March 3rd letter was "petitioning activity" because the letter was ultimately used as

---

[3] Since the Court's hearing on this motion, both parties have sought to supplement the record to include documents stemming from Nordic Aquafarms' subsequent filings with the Maine Department of Environmental Protection and the Maine Bureau of Parks and Lands. The Mabees further sought to supplement the record with a copy of an order from the Waldo County Superior Court in a related quite title action, and the Eckrotes did not oppose the Court's consideration of it. None of these new documents, however, alter my analysis or conclusion.

part of Nordic Aquafarms' petitioning activity with the Bureau of Parks and Lands. In *Klein*, a person reported to a child's parent that the child might be a victim of abuse. This report was subsequently passed along to governmental authorities. The court deemed the person's initial disclosure of potential child abuse to the child's parent as petitioning activity, reasoning that "communications that are intimately intertwined with, and preparatory to, the filing of judicial proceedings qualify as petitioning activity for the purpose of the anti-SLAPP statute." *Klein*, 2019 Me. Super. LEXIS 66, at *22 (quoting *Graham-Sult v. Clainos*, 738 F.3d 1131, 1142–43 (9th Cir. 2013)). The *Klein* court characterized the initial disclosure of child abuse to that child's parent as "a prelude" to the person's subsequent disclosures to various family service organizations and the court. *Id.* at *23. Given that persons who report suspected child abuse in good faith are statutorily immune from civil or criminal liability, the *Klein* court construed "petitioning activity" broadly so as to encompass the individual's initial disclosure of child abuse to the parent, which was a prelude to the subsequent reports made to the government. *Id.* at *21, *23.

The unique public policy considerations at work in *Klein*, which warranted a broad reading of "petitioning activity," are not applicable to this case. Here, the Eckrotes' alleged petitioning activity is not the first of several reports of child abuse, but simply the endorsement of a letter clarifying the terms of a private easement agreement. Accordingly, the Eckrotes' endorsement of the March 3rd letter was neither petitioning activity in its own right, nor was it a prelude to subsequent petitioning activity by them.

8

**B.      Petitioning on Their Own Behalf**

Even if the Eckrotes' endorsement of the March 3rd letter constituted "petitioning activity," the Eckrotes must still establish the second component of step one—that their petitioning activity was done on their own behalf. Several Massachusetts and Maine cases establish this secondary requirement.

The Massachusetts Supreme Judicial Court, for example, has "read the phrase 'based on said party's exercise of its right of petition under the constitution' [contained in Massachusetts's anti-SLAPP statute] as restricting the statute's coverage to those defendants who petition the government on their own behalf." *Kobrin v. Gastfriend*, 821 N.E.2d 60, 64 (Mass. 2005). And in *Fustolo v. Hollander*, 920 N.E.2d 837 (Mass. 2010), the Massachusetts Supreme Judicial Court concluded that a newspaper reporter's article did not qualify as protected petitioning activity under the Massachusetts anti-SLAPP statute because the article "did not contain statements seeking to redress a grievance or to petition for relief *of her own*." *Fustolo*, 920 N.E.2d at 842 (emphasis in original). The Maine Law Court, relying in part on *Fustolo*, has come to the same conclusion. *See Gaudette v. Mainely Media, LLC*, 160 A.3d 539, 543 (Me. 2017) (concluding, "Maine's anti–SLAPP statute is not applicable to newspaper articles unless those articles constitute the newspaper petitioning on its own behalf or the party seeking to invoke the anti–SLAPP statute is a party that used the newspaper to broadcast the party's own petitioning activities").

Here, the Mabees' claim against the Eckrotes is based on the March 3, 2019 letter by Nordic Aquafarms which the Eckrotes endorsed at Nordic Aquafarms'

9

request, signifying their agreement to the terms of the letter. Nordic Aquafarms used the letter as part of its application to the Maine Bureau of Parks and Lands for a submerged lands lease. The Eckrotes acknowledge that Nordic Aquafarms was the entity seeking the permit and that the Eckrotes' intention in endorsing the March 3rd letter "was to assist Nordic [Aquafarms] with the permitting process." ECF No. 22 at 28. The submission of the letter by Nordic Aquafarms to the Bureau in support of its lease application was petitioning activity. But the letter was not petitioning activity by the Eckrotes to redress a grievance or to seek relief on their own behalf.[4] The Eckrotes endorsement of the letter may have supported Nordic Aquafarms in its petitioning activities, but it was not petitioning activity conducted on the Eckrotes' own behalf.

## IV. CONCLUSION

For the reasons I have explained, the Eckrotes' have not met their burden at step one to show that the slander of title claim filed against them by the Mabees is based on petitioning activity made as part of the Eckrotes' own right of petition. Accordingly, it is **ORDERED** that the Eckrotes' Second Special Motion to Dismiss and Request for Attorney Fees is **DENIED** (ECF No. 12). In addition, it is **ORDERED** that the Eckrotes' First Special Motion to Dismiss and Request for Attorney Fees (ECF No. 8) is **DENIED** as moot.

---

[4] The Eckrotes correctly contend that their motivation for engaging in their asserted petitioning activity at issue does not factor into whether they have met their burden at step one of the special motion to dismiss analysis. *See Fustolo*, 920 N.E.2d at 842. Thus, a court at step one does not consider the moving party's motivation in making its "petition"—that is, whether the Eckrotes "had or lacked a subjective and sincere personal interest" in Nordic Aquafarms' submerged lands lease petition. *Id.*

10

**SO ORDERED.**

**Dated this 11th day of March, 2020.**

                                                  **/s/ JON D. LEVY**
                                    **CHIEF U.S. DISTRICT JUDGE**